**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RANDY DALE CRAM,
      Appellant,

    v.

DEPARTMENT OF THE AIR FORCE,
      Agency.

DOCKET NUMBERS
DA-0752-16-0189-I-1
DA-0752-16-0189-C-1

DATE: February 6, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Cynthia Rowe D'Antonio, Esquire, Oklahoma City, Oklahoma, for the
    appellant.

Michael J. Taber, Esquire, and Thomas Burks, Tinker Air Force Base,
    Oklahoma, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

¶1      The agency has filed a petition for review of the compliance initial decision, which found the agency in noncompliance with the settlement agreement. Because the agency appeared to challenge the validity of the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

settlement agreement, the Office of the Clerk of the Board also docketed the agency's submission as a petition for review of the initial decision dismissing the underlying removal appeal as settled. We JOIN these two matters under 5 C.F.R. § 1201.36(b) because doing so would expedite the processing without adversely affecting the interests of the parties. We VACATE the initial decision in the underlying removal appeal because, as further explained below, the settlement agreement contains an illegal provision. We also GRANT the agency's petition for review of the compliance initial decision, VACATE that decision, and REMAND these joined matters to the Dallas Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      Effective December 29, 2015, the agency removed the appellant for illegal drug use after a urine specimen it collected from him tested positive for an illegal drug. *Cram v. Department of the Air Force*, MSPB Docket No. DA-0752-16-0189-I-1, Initial Appeal File (IAF), Tab 5 at 24, 80, 96. The Department of the Army laboratory at Fort Meade, Maryland, conducted the initial testing and retained a portion of the appellant's urine specimen, referred to as Sample B.[2] IAF, Tab 5 at 54, 96, Tab 6 at 11; *Cram v. Department of the Air Force*, MSPB Docket No. DA-0752-16-0189-I-1, Petition for Review (PFR) File, Tab 3 at 7; *Cram v. Department of the Air Force*, MSPB Docket No. DA-0752-16-0189-C-1, Compliance File (CF), Tab 4 at 24.

¶3      The appellant filed a Board appeal of his removal, which the parties settled. IAF, Tab 1, Tab 13 at 5-7, Tab 14, Initial Decision (ID) at 1-2. After determining that the parties voluntarily entered into the settlement agreement, they understood it, and it was lawful on its face, the administrative judge issued an initial decision

---

[2] The Mandatory Guidelines for Federal Workplace Drug Testing Programs in effect at the time required that "each specimen [be] collected as a split specimen." 73 Fed. Reg. 71858, 71860, 71880 (Nov. 25, 2008).

that dismissed the appeal as settled and entered the agreement into the record for enforcement purposes. ID at 1-2.

¶4 Under the agreement, the appellant agreed to dismiss his appeal with prejudice and to waive the right to challenge his removal in the future, including before the Board, in exchange for the agency's promise to retest Sample B at a Substance Abuse and Mental Health Services Administration (SAMHSA) certified laboratory of his choosing (paragraph 1a). IAF, Tab 13 at 5-6. In further consideration for withdrawing his appeal and waiving his appeal rights, the agency made a conditional promise: (1) if Sample B tested negative for the illegal drug, the agency would cancel the appellant's removal, restore him "to status quo ante," and pay attorney fees (paragraph 1b); and (2) if it tested positive, the removal would "stand as executed"; but, according to a handwritten provision, the appellant could use Sample B for deoxyribonucleic acid (DNA) testing at his own cost and expense (paragraph 1c). *Id.* at 5. The parties also agreed that "[a]ny provision of this Settlement Agreement declared or determined by any court, administrative tribunal, or agency to be illegal or invalid will not affect the validity of the remaining provisions." *Id.* at 6.

¶5 The agency coordinated the release of Sample B to the designated SAMHSA-certified laboratory, which completed the drug test. CF, Tab 4 at 10, 38-40. The agency then requested that the lab release Sample B to the appellant for DNA testing; however, the lab refused, claiming that "Federal Regulations" prohibited such testing.[3] *Id.* at 13-14. The agency submitted a request to SAMHSA to allow the release of Sample B to the appellant for the purpose of DNA testing. CF, Tab 6 at 6. SAMHSA rejected the agency's request, determining that the Mandatory Guidelines for Federal Workplace Drug Testing

---

[3] The agency has asserted on review that Sample B tested positive for the illegal drug. PFR File, Tab 3 at 7-8. However, the statements of a party's representative in a pleading do not constitute evidence. *Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995). The agency has not provided any evidence in support of its claim.

Program (Guidelines), promulgated by the Department of Health and Human Services (HHS), prohibited any HHS-certified laboratory from testing the specimen for DNA or releasing it for that purpose. *Id.* at 5-7. As evidenced by the dates of the agency's email correspondence, it made efforts to secure the release of the sample through the appellant's filing of his petition for enforcement, albeit without success. *Id.* at 7-11. The appellant therefore was unable to obtain the DNA testing of Sample B. CF, Tab 1 at 11, Tab 8, Compliance Initial Decision (CID) at 2-3.

¶6      The appellant filed a petition for enforcement, arguing that the agency materially breached the agreement by failing to secure the release of Sample B for DNA testing. CF, Tab 1 at 2-3. The agency argued that the provision was unenforceable because it violated the HHS Guidelines to subject the sample to DNA testing. CF, Tab 4 at 6. In reply, the appellant requested that the entire agreement be voided due to the impossibility or illegality of obtaining the DNA testing. CF, Tab 7 at 2-4.

¶7      The administrative judge issued an initial decision finding that the agency materially breached the settlement agreement by failing to secure the release of Sample B for DNA testing. CID at 3-4. He further found that specific performance could not be ordered because the agreed-upon DNA testing was illegal, and he therefore rescinded the settlement agreement, as requested by the appellant. CID at 5. He did not address the appellant's argument that the settlement agreement should be voided. CID at 5 n.2.

¶8      The agency has filed a timely petition for review of the compliance initial decision, claiming that the appellant's petition for enforcement was untimely, it did not breach the DNA-testing provision, any nonperformance should be excused due to impossibility, and any breach is immaterial. *Cram v. Department of the Air Force*, MSPB Docket No. DA-0752-16-0189-C-1, Compliance Petition for Review (CPFR) File, Tab 1 at 5, 15-19. The agency further argues that, while the DNA-testing provision is unenforceable because it is illegal and the parties were

mutually mistaken as to the lawfulness of that provision, it should be severed from the agreement, pursuant to the severability clause, and the remainder of the agreement should be enforced. *Id.* at 15. The appellant has filed a response. CPFR File, Tab 3.

¶9 As discussed above, the Office of the Clerk of the Board also docketed the agency's submission as a petition for review of the initial decision dismissing the appeal as settled. PFR File, Tab 2. In its response to the Clerk's order, the agency denies that it is challenging the validity of the settlement agreement and repeats the claims it raised in the compliance petition for review. PFR File, Tab 3 at 4-6. The appellant has not filed any pleadings in connection with the petition for review in the underlying matter.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The settlement agreement was the result of a mutual mistake of law which may render it invalid.</u>

¶10 A settlement agreement must be set aside if it is tainted with invalidity either by fraud practiced upon a party or by a mutual mistake under which both parties acted. *Farrell v. Department of the Interior*, <u>86 M.S.P.R. 384</u>, ¶ 8 (2000). If both parties acted under a mutual mistake as to the lawfulness of the provision at issue and the provision was material to the agreement, the agreement must be set aside. *Id.*, ¶ 12. As both parties argue, PFR File, Tab 1 at 17; CPFR File, Tab 3 at 8-9, the DNA-testing provision is illegal.[4] According to the HHS Guidelines, DNA testing "is prohibited unless authorized in accordance with applicable federal law," and SAMHSA-approved laboratories may not release

---

[4] The agency states in response to the docketing of the petition for review in the underlying matter that it is not challenging the validity of the settlement agreement. PFR File, Tab 3 at 6. However, it continues to assert that the DNA-testing provision was the result of a mutual mistake of law. *Id.* at 23.

drug-testing "[s]pecimens . . . unless expressly authorized by the[] Guidelines or by applicable federal law."[5]  82 Fed. Reg. 7920, 7940-41 (Jan. 23, 2017).

¶11        Given this illegality, the Board must address whether the parties still have an enforceable agreement.  Moreover, if the agreement is invalid, the compliance appeal is moot.  *See generally Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶ 8 (2016) (explaining that a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the case).

The record is not sufficiently developed to determine whether the DNA-testing provision is severable, preventing a finding on the agreement's enforceability.

¶12        Both parties argue that they were mistaken as to the legality of the DNA-testing provision when they entered into the agreement; however, they disagree as to how this illegality affects the remainder of the agreement.  PFR File, Tab 1 at 14-15, 17-18; CPFR File, Tab 3 at 8-9.  The parties' inclusion of a severability clause, as here, suggests that they intended for the contract provisions to be divisible.  IAF, Tab 13 at 6; *see American Savings Bank*, *F.A. v. United States*, 519 F.3d 1316, 1325 (Fed. Cir. 2008) (relying on "the language of a contract and the intent of the parties in determining whether a contract is divisible"); 15 Williston on Contracts § 45:6 (4th ed. 2018) (explaining that "[t]he parties' intent to enter into a divisible contract may be expressed . . . through a so-called 'severability clause'").  We therefore look first to the severability clause to determine whether the DNA-testing provision is severable.  *See Mital v. Department of Agriculture*, 116 M.S.P.R. 589, ¶ 6 (2011)

---

[5] While the HHS Guidelines in effect at the time the parties contracted did not explicitly identify DNA testing as prohibited, the general prohibition that samples "collected pursuant to Executive Order 12564, Public Law 100-71," such as the appellant's, IAF, Tab 5 at 91, could only be tested for drugs effectively rendered such DNA testing illegal, Mandatory Guidelines for Federal Workplace Drug Testimony Programs, 73 Fed. Reg. 71858, 71861, 71880 (Nov. 25, 2008); *see* An Act Making Supplemental Appropriations for the Fiscal Year Ending September 30, 1987, Pub. L. No. 100-71, § 503, 101 Stat. 391, 468-71 (authorizing HHS to adopt mandatory guidelines for drug testing Federal employees) (codified at 5 U.S.C. § 7301 note (Restriction on Availability of Funds to Administer or Implement Drug Testing)).

(explaining that the Board looks first to the terms of the agreement to determine the parties' intent when they contracted). The boilerplate severability clause at issue, however, states only that an illegal provision "will not affect the validity of the remaining provisions." IAF, Tab 13 at 6. It does not indicate whether the parties intended for only the final two sentences of paragraph 1c, which contains the DNA-testing provision, to be excised, as the agency contends, PFR File, Tab 3 at 19-20, or whether the parties believed it to be so interwoven with the rest of paragraph 1c, which states that the appellant's removal is to "stand as executed" in the event that Sample B tested positive for the illegal drug, that the entire paragraph would be unenforceable, *see generally Day v. Department of the Air Force*, [78 M.S.P.R. 364](), 366-67 (1998) (finding the entirety of paragraph 2.d. of the parties' settlement agreement unenforceable due to an illegal clause within that provision).

¶13     Alternatively, an illegal portion of a settlement agreement may be severed and the remaining legal provisions may be enforced if the "legal promises on one side . . . [are] wholly supported by legal promises on the other, and the illegal portion of the contract does not go to its essence." 8 Williston on Contracts § 19.73 (4th ed. 2018); *see Day*, 78 M.S.P.R. at 368 (recognizing that the Board may sever a nonmaterial, illegal term and enforce the rest of the agreement). Without the DNA-testing provision, the agreement is supported by legal promises on both sides.[6] However, it is unclear whether the second two sentences of

---

[6] Even absent the drug-testing provision, the agreement contains an exchange of legal promises, as is required to have an enforceable contract. *See Black v. Department of Transportation*, [116 M.S.P.R. 87](), ¶ 17 (2011) (explaining that to have an enforceable contract, there must be consideration, i.e., bargained-for performance or a return promise that does not involve the performance of a preexisting duty). At the very least, the agency promised to test the appellant's Sample B urine specimen for the illegal drug in exchange for the appellant's promise to waive his appeal rights. IAF, Tab 13 at 5. There is no indication or allegation that the agency was required to allow the appellant that testing option. IAF, Tab 6 at 135-236; *cf. Black*, [116 M.S.P.R. 87](), ¶¶ 18-19 (reasoning that the agency's offer to allow the appellant to seek alcohol treatment and to enter into a last chance settlement agreement was not consideration for waiving his

paragraph 1c, which contain the DNA provision, go to the essence of the contract. *See Mital*, [116 M.S.P.R. 589](), ¶ 6 (finding that a contract is ambiguous when it is susceptible to differing, reasonable interpretations). The text of paragraph 1c does not resolve this ambiguity. IAF, Tab 13 at 5.

¶14        Extrinsic evidence of intent may be considered here because the parties' intent as to the severability provision and the materiality of the DNA-testing provision are both ambiguous. *See Mital*, [116 M.S.P.R. 589](), ¶ 6. As to the materiality of this provision, the appellant argues that the ability to DNA test the specimen was essential for him to "clear his good name and regain employment." CPFR File, Tab 3 at 8-10; CF, Tab 1 at 3. His attempt to enforce the DNA-testing provision may be evidence of its materiality. *See Jackson v. Department of the Army*, [123 M.S.P.R. 178](), ¶ 11 (2016) (finding that the appellant's decision to invoke the revocation provision suggested that it was material to her decision to sign the settlement agreement). However, neither he nor the agency submitted any additional evidence on this issue. The assertions and statements that the appellant's representative and the agency set forth in their respective pleadings are not evidence. CPFR File, Tab 3 at 8-10; CF, Tab 1 at 3; PFR File, Tab 1 at 17-18; *see Hendricks v. Department of the Navy*, [69 M.S.P.R. 163](), 168 (1995). Accordingly, we cannot determine whether the parties intended for the DNA-testing provision to be divisible at the time they entered into the agreement, or whether it is a nonmaterial term that may be severed because the remaining legal provisions are supported by consideration. Remand is necessary

---

appeal rights if agency policy required the agency to make that offer). We will not enter into a precise calculation of determining the adequacy of that consideration. *See Pappas v. Office of Personnel Management*, [76 M.S.P.R. 152](), 158 (1997) (reasoning that a very small amount of consideration, the proverbial "peppercorn," may support an enforceable contract), *aff'd per curiam*, 155 F.3d 565 (Fed. Cir. 1998) (Table). The sufficiency of what would remain after severance is considered when addressing the materiality issue. *See generally Young v. U.S. Postal Service*, [113 M.S.P.R. 609](), ¶ 10 (2010) (defining materiality, as to a party's noncompliance with a settlement agreement term, as a matter of vital importance or that goes to the essence of the contract).

for the submission of extrinsic evidence of the parties' intent. *See Mital*, 116 M.S.P.R. 589, ¶ 9.

The petition for enforcement was timely filed.

¶15     The agency argues that the appellant untimely filed his petition for enforcement. CPFR File, Tab 1 at 13. We disagree. A petition for enforcement must be filed within a reasonable time after the petitioner becomes aware of the breach. *Phillips v. Department of Homeland Security*, 118 M.S.P.R. 515, ¶ 11 (2012). Here, the appellant made diligent efforts to determine whether the agency was going to comply with the agreement and, in waiting to file his enforcement petition, reasonably relied on the agency's assertions that it was still attempting to negotiate the release of Sample B. CPFR File, Tab 3 at 10; CF, Tab 1 at 8-13, Tab 6 at 7-11. The agency itself was in the process of determining the legality of the provision during the compliance proceedings. CF, Tab 4 at 6-11, Tab 6 at 5-11. Under these circumstances, we find the appellant acted reasonably.

## ORDER

¶16     For the reasons discussed above, we remand this case to the Dallas Regional Office for further adjudication in accordance with this Remand Order. As explained above, the administrative judge should afford the parties an opportunity to submit extrinsic evidence on the severability of the DNA-testing provision. If necessary to resolve disputed issues of material fact, the administrative judge also should conduct a hearing so that the parties may present testimonial evidence in support of their positions. *See Mital*, 116 M.S.P.R. 589, ¶ 9.

¶17     Upon the close of the record on remand, the administrative judge should issue a new initial decision in these joined matters. If the administrative judge finds that the DNA-testing provision is not severable, he should set aside the settlement agreement as invalid, reinstate the underlying appeal, and adjudicate the merits of the appellant's removal. *See Weldon v. Department of Veterans Affairs*, 119 M.S.P.R. 478, ¶ 8 (2013). If the administrative judge finds that the

DNA-testing provision is severable, he should sever it and enforce the remaining provisions, in accordance with the severability clause. *See Flores v. U.S. Postal Service*, 115 M.S.P.R. 189, ¶ 10 (2010) (explaining that the Board has no authority to unilaterally modify the terms of a settlement agreement). Depending upon the outcome of the severability issue, the administrative judge's finding as to the severability of the DNA-testing provision will likely render either the removal or compliance appeal moot. *See Hess*, 124 M.S.P.R. 40, ¶ 8.

FOR THE BOARD:  /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.